CARL D. POPLAR, PA
Carl D. Poplar, Esquire
1010 Kings Highway South, Building 1
Cherry Hill, New Jersey 08034
(856) 216-9979

JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys at Law
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
jacobsbarbone@comcast.net
Attorneys for Nicholas M. DePace, M.D.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF NEW JERSEY, ex rel. NICHOLAS M. DEPACE, M.D., | Civil Action No. 08-5626 (JEI) |
| Plaintiff | PLAINTIFF DEPACE'S APPLICATION FOR EMERGENT RELIEF TO REOPEN PURSUANT TO L. CIV. R. 41.1(b) AND FOR THE COURT'S DETERMINATION OF REASONABLENESS OF ATTORNEYS' FEE PURSUANT TO L. CIV. R. 103.1(a) |
| v. | |
| THE COOPER HEALTH SYSTEM, a New Jersey Non-Profit Corporation (Cooper Hospital), et als | |
| Defendants. | |

TO:   Gaetan J. Alfano, Esquire
Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP
1818 Market Street, Suite 3402
Philadelphia, Pa. 19103

David H. Dauenheimer, Esquire, AUSA
United States Attorney's Office
970 Broad Street, Room 700
Newark, New Jersey 07102

Robert K. DeConti, Assistant Inspector General for Legal Affairs
Office of the Inspector General
United States Department of Health & Human Services
200 Independence Avenue S.W.
Washington, DC 20201

John J. Hoffman, Executive Assistant Attorney General
New Jersey Department of Law & Public Safety
Hughes Justice Complex
25 W. Market Street, P.O. Box 080
Trenton, New Jersey 08625-0080

Michael Critchley, Sr., Esquire
Critchley, Kinum & Vasquez, LLC
75 Livingston Road
Roseland, New Jersey 07068

PLEASE TAKE NOTICE that plaintiff Nicholas M. DePace, M.D. shall move by and through counsel, namely Carl D. Poplar, Esquire, and Louis M. Barbone, Esquire, of the law firm of Jacobs & Barbone, P.A., on notice to and in the presence of Gaetan J. Alfano, Esquire of the firm of Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP, former attorneys for plaintiff DePace, and on notice to and in the presence of David H. Dauenheimer, Esquire, Assistant United States Attorney for the District of New Jersey on behalf of the United States of America, and Robert K. DeConti, Assistant Inspector General for Legal Affairs on behalf of the United States Department of Health & Human Services, and upon due notice to and in the presence of John J. Hoffman, Executive Assistant Attorney General, appearing on behalf of the State of New Jersey, and on notice to and in the presence of Michael Critchley, Sr., Esquire, of the law firm of Critchley, Kinum & Vasquez, LLC, counsel for Cooper Hospital, before the Hon. Joseph E. Irenas, U.S.D.J., at the Mitchell H. Cohen U.S. Courthouse, One John F. Gerry Plaza, Camden, New Jersey, on April 1, 2013, or on an accelerated date for the purpose of plaintiff's application for emergent relief, for an Order:

(1)     Pursuant to L. Civ. R. 41.1(b), reopening the action pursuant to the Court's retention of jurisdiction, for the purpose of compelling plaintiff's former counsel to comply with the terms and conditions of the settlement agreement; and,

(2)     Pursuant to L. Civ. R. 103.1(a), invalidating the Contingent Fee Agreement between plaintiff DePace and his former attorneys, Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP, and invoking the Court's inherent authority to set a reasonable counsel fee with regard to the settlement agreement ordered by the court on January 24, 2013; and

(3)     Pursuant to L. Civ. R. 65.1(a), requiring the firm of Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP to Show Cause why an injunction restraining a Petition to compel private arbitration filed in the Philadelphia Court of Common Pleas on February 19, 2013, and a motion to preserve the status quo of disputed funds, filed in the Philadelphia Court of Common Pleas on February 21, 2013 should not issue until final determination by the United States District Court.

Plaintiff DePace shall reply upon his Affidavit, the Affidavit of Louis M. Barbone, Esquire as well as the brief of counsel, all filed simultaneously herewith. Plaintiff further relies upon the Certificate of service and proposed form of Order appended hereto.

Jacobs & Barbone, P.A.

_____

Louis M. Barbone

Dated: 2/25/13

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF NEW JERSEY, ex rel. NICHOLAS M. DEPACE, M.D., <br><br>       Plaintiff <br><br> v. <br><br> THE COOPER HEALTH SYSTEM, a New Jersey Non-Profit Corporation (Cooper Hospital), et als., <br><br>       Defendants. | Civil Action No. 08-5626 (JEI) |

PLAINTIFF DEPACE'S BRIEF IN SUPPORT OF APPLICATION FOR EMERGENT RELIEF PURSUANT TO L. CIV. R. 65.1, MOTION TO REOPEN PURSUANT TO L. CIV. R. 41.1b) TO ENFORCE THE TERMS OF SETTLEMENT AGREEMENT AND MOTION TO INVOKE THE COURT'S REVIEW OF COUNSEL FEES PURSUANT TO L. CIV. R. 103.1(a).

CARL D. POPLAR, PA
Carl D. Poplar, Esquire
1010 Kings Highway South, Building 1
Cherry Hill, New Jersey 08034
(856) 216-9979

JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys at Law
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
jacobsbarbone@comcast.net
Attorneys for Nicholas M. DePace, M.D.

On the Brief:
    Louis M. Barbone, Esquire

Of Counsel:
    Carl D. Poplar, Esquire

## PROCEDURAL HISTORY

On November 12, 2008 Nicholas M. DePace, M.D. filed a *qui tam* action in the United States District Court for the District of New Jersey pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §3730(b) and the New Jersey False Claims Act, N.J.S.A. 2A:32C-1, et. seq.

On January 17, 2013 a Settlement Agreement was executed by all parties. (DePace Affidavit, Exhibit 7).

On January 24, 2013 the Court entered an Order dismissing the complaint upon consideration of the Joint Stipulation for Dismissal filed by the United States, the State of New Jersey and the Relator given the aforenoted Settlement Agreement. (DePace Affidavit, Exhibit 1).

On January 31, 2013 a dispute arose between the Relator and his former counsel, Mark S. Raspanti and Michael A. Morse, Esquire of the law firm of Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP. (DePace Affidavit, pp. 3-7 andExhibit 9).

On February 19, 2013, the Relator's former counsel, by and through Gaetan J. Alfano, Esquire, filed a petition in the Philadelphia Court of Common Pleas to compel private arbitration pursuant to a Contingent Fee Agreement executed by the Relator on or about February 15, 2008. (DePace Affidavit, Exhibit 2).

On February 21, 2013 the Relator's former counsel, by and through Gaetan J. Alfano, Esquire, filed a motion in the Philadelphia Court of Common Pleas to preserve the status of disputed funds, by seeking an Order of the state court directing that all funds remain in an escrow account pending resolution of the dispute. (DePace Affidavit, Exhibit 3).

Nicholas M. DePace, M.D. now files the instant motion and application to enjoin the state court proceedings given this Court's retention of jurisdiction.   Plaintiff further seeks to enter an Order enforcing the settlement agreement, and the Court's determination on the reasonableness of counsel fees charged to the Relator.

## STATEMENT OF JURISDICTION

Plaintiff Nicholas M. DePace, M.D. is a citizen of the State of New Jersey residing at 438 Ganttown Road, Suite B8-9, Sewell, New Jersey. The instant lawsuit was filed November 12, 2008 in the United States District Court for the District of New Jersey. Plaintiff's former counsel, the firm of Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP, is a law firm with a principal place of business at 1818 Market Street, Philadelphia, Pennsylvania. The firm filed, litigated and settled the case at all times under the jurisdiction of the United States District Court for the District of New Jersey.

The Settlement Agreement executed January 17, 2013 expressly identified the governing law applicable to the parties and the agreement:

> 21.   This Agreement is governed by the laws of the United States and New Jersey. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of New Jersey. For the purpose of construing this Agreement, this Agreement shall be deemed to have been drafted by all parties to this Agreement and shall not therefore, be construed against any party for that reason in any subsequent dispute.

(DePace Affidavit, Exhibit 7, ¶21, p10).

The Settlement Agreement was executed by all parties including the Relator's former counsel, Michael A. Morse, Esquire, of the Pietragallo law firm. (DePace Affidavit, Exhibit 7, p15).

The Court's Order of Dismissal entered January 24, 2013 further provides as follows:

> Ordered that the Court shall retain jurisdiction over any disputes that may arise regarding compliance with the Settlement Agreement; and it is further . . .

(DePace Affidavit, Exhibit 1, p2).

As such, by virtue of the Settlement Agreement as well as the Court's order, the District Court maintains jurisdiction over any dispute arising under the Agreement. Moreover, the Court's authority to reopen the settlement and compel compliance with the terms and conditions thereof is pursuant to L. Civ. R. 41.1(b). Likewise, the Court's inherent jurisdiction regarding the issues of the reasonableness of fees and the arbitrability of the current fee dispute between the Relator and former counsel, is codified in L. Civ. R. 103.1(a). The Court's original and supplemental jurisdiction over all disputes framed within the Relator's current motion and application is therefore concretely established.

STATEMENT OF THE FACTS

**A.    Enforcement of the Settlement Terms**

The Settlement Agreement of January 17, 2013 directed that the Relator's share of settlement proceeds be deposited by the United States and the State of New Jersey directly into the Relator's account by wire transfer. The Settlement Agreement specifically provides:

> 3.    Conditioned upon the United States and New Jersey receiving their respective settlement amounts (together, the "settlement amount") from Cooper and as soon as feasible after receipt, the United States shall pay $1,951,110 and New Jersey shall pay $442,890 to Relator by electronic funds transfer pursuant to written instructions provided by Relator's counsel.

3

(DePace Affidavit, Exhibit 7, p3, ¶3).

Although that term of the Settlement Agreement could not be clearer, Relator's former counsel directed that the settlement amount be wired to the law firm's account and not the Relator's. On or about February 6, 2013 the entirety of the settlement amount was deposited with the Pietragallo law firm.

Plaintiff DePace objected through current counsel during an in person meeting with former counsel, Messrs. Raspanti and Morse. Following the meeting, the firm was to consider plaintiff's objection and advise. Dr. DePace made clear that the firm's misdirection of the settlement amount was a direct violation of the settlement terms and conditions. (Barbone Affidavit, ¶___). Notwithstanding plaintiff's objection, the Pietragallo firm maintained the full amount of settlement and to date has released only $430,000 of that sum to Relator. The firm has likewise released an equal amount to itself constituting full payment of statutory fees. (DePace Affidavit, Exhibit 4).

The parties agreed to continue the discussion in order to resolve their disputes. Following receipt of plaintiff DePace's factual and legal position through current counsel on February 14, 2013 (Barbone Affidavit, ¶__, Exhibit __), the Pietragallo law firm ended the negotiations by filing a petition and motion in the Philadelphia Court of Common Pleas. (DePace Affidavit, Exhibits 2 and 3).

**B.    The Underlying Fee Dispute.**

The Settlement Agreement of January 17, 2013 purports to identify full payment of counsel fees, costs and expenses to plaintiff's former counsel. The Settlement Agreement declared that "full payment" for all expenses and attorneys' fees would be paid by Cooper as follows:

4.     Cooper agrees to pay Relator's counsel, and Relator's counsel agrees to accept as full payment, $430,000 for expenses, and attorneys' fees and costs in accordance with §3730(d)(1).

(DePace Affidavit, Exhibit 7, ¶4, p3).

The firm's representation of "full payment" was based upon its transmittal of a final invoice for all costs and fees incurred in the litigation to counsel for Cooper on October 16, 2012. (DePace Affidavit, Exhibit 8). The Pietragallo firm represented that the entire amount due for all legal fees, costs and expenses through October 16, 2012 totaled $458,420.55. (DePace Affidavit, Exhibit 8, p3). According to the firm's invoice, the great majority of attorneys' fees had been billed at $650, $535 and $425 per hour. The firm's billing statement at those hourly rates for the lead attorneys constituted $443,296.50 of the entire invoice. (Ibid., p5).

The Relator's former firm nonetheless agreed to accept "full payment" at $430,000 without disclosing to any of the parties or the Court the fact that its acceptance of that sum was not its "full payment" pursuant to the agreement. Instead, the Pietragallo firm produced a disbursement memorandum to plaintiff DePace on January 31, 2013 allocating an additional $720,918.25 pursuant to its Contingent Fee Agreement with DePace, said sum constituting 30% of the total Relator's share paid by the United States and State of New Jersey. (DePace Affidavit, Exhibit 9).

The Pietragallo firm was therefore maintaining complete entitlement to total fees in the amount of $1,150,918.20 while representing and disclosing to the Court and all other parties to the settlement that it was agreeing to accept "full payment" at $430,000.

Plaintiff DePace's objection was that a fee value of 268% is simply unreasonable, as in violation of New Jersey Rules of Professional Conduct and further that the fee

dispute had to be brought before the District Court. Once Dr. DePace's factual and legal position was transmitted to the Pietragallo firm on February 14, 2013 (Barbone Affidavit, ¶__, Exhibit ___), the Pietragallo firm filed five days later in the Philadelphia Court of Common Pleas in an attempt to circumvent the jurisdiction of the federal district and avoid applicability of the controlling Rules of Professional Conduct.

<u>LEGAL ARGUMENT</u>

<u>POINT I</u>

DR. DEPACE IS ENTITLED TO ENFORCEMENT OF THE SETTLEMENT TERMS, SPECIFICALLY HIS RECEIPT OF THE SETTLEMENT AMOUNT.

The January 17, 2013 Settlement Agreement between the parties could be no clearer. The Relator's share of settlement proceeds was to be wired directly to Dr. DePace by the United States and the State of New Jersey. The only breakdown in accomplishing that settlement term was the unilateral act of Dr. DePace's former counsel. Instead of acting precisely consistent with the Settlement Agreement in providing the proper instruction for deposit of the Relator's share of $2,403,060.63 to Dr. DePace's account, the firm diverted the funds into its account. The firm did that without the consent or authorization of Dr. DePace. The firm's action is in direct violation of the Settlement Agreement and the Court's Order confirming that settlement. The firm's action not only violates the Agreement and Court Order, its retention of the Relator's share is for the purpose of obtaining coercive leverage over Dr. DePace in an attempt to weaken his objection to the fee division.

Plaintiff is entitled to an immediate Order compelling the Pietragallo firm to deposit the settlement amount as previously directed and ordered by the Settlement

Agreement and the Court's Order of Dismissal. The firm's attempt to insulate those settlement proceeds by deposit into an escrow bearing account and seeking the protection of the Philadelphia Court of Common Pleas is simply inappropriate and constitutes an intentional violation of the Settlement Agreement.

POINT II

> PURSUANT TO L. CIV. R. 103.1(a) AND THE NEW JERSEY RULE OF PROFESSIONAL CONDUCT, 1.5, REASONABLE COUNSEL FEES ARE TO BE DETERMINED BY THE FEDERAL DISTRICT COURT. ANY ATTEMPT TO CIRCUMVENT THE CONTROLLING RULES OF PROFESSIONAL CONDUCT BY AN INDEPENDENT PETITION TO COMPEL PRIVATE ARBITRATION IN THE PHILADELPHIA COURT OF COMMON PLEAS USURPS THE INHERENT AUTHORITY OF THE FEDERAL COURT AND VIOLATES THE APPLICABLE RULES OF PROFESSIONAL CONDUCT AS WELL AS NEW JERSEY PUBLIC POLICY.

In the federal District Court for the District of New Jersey, the New Jersey Rules of Professional Conduct govern the ethical and professional responsibilities of counsel subject to applicable federal statutes and decisional law:

> (a)    The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the Bar admitted to practice in this court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law.

L. Civ. R. 103.1(a).

The Pietragallo firm undertook Dr. DePace's representation with intent and purpose to file pursuant to federal *qui tam* provisions and the New Jersey False Claims Act in the Federal District of New Jersey. As such, the Pietragallo firm knew that:

> In this district, questions of attorney ethics are governed by L. Civ. R. 103.1(a) which provides that the conduct of attorneys admitted before this court shall be governed by the Rules of Professional Conduct of the American Bar Association as modified by the New Jersey Supreme Court. FMC Corp. v. Guthery, 209 W.L. 485280, 2009 U.S. Dist. Lexis 14609,

7

2009 W.L. 485280 (D.N.J. February 24, 2009); see also <u>Carlyle Towers Condo Assoc. v. Crossland Sav.</u>, 944 F.Supp. 341, 345 (D.N.J. 1996). Typically, when interpreting the Rule of Professional Conduct, courts "look [ ] to New Jersey's state court's interpretations of them as primary authority and modifies that interpretation when required or permitted by federal law. <u>Guthrey</u>, 2009 W.L. 485280, at *3, 2009 U.S.D. Lexis 14609 at *5.

<u>Wyeth v. Abbott Laboratories</u>, 692 F. Supp.2d 453, 455-456 (D.N.J. 2010).

The Pietragallo firm knew at the commencement of its relationship with Dr. DePace that he was a New Jersey resident and they were going to be filing under the False Claims Act against Cooper Health Systems in the Federal District of New Jersey. The very fee agreement upon which the firm relies makes that clear on the first page. (DePace Affidavit, Exhibit 2, p1 of Exhibit B thereto.) The fact that the Pietragallo firm has its principal practice in the Commonwealth of Pennsylvania and that its Contingent Fee Agreement was signed in Pennsylvania pursuant to Pennsylvania law is irrelevant:

> New Jersey's Rules of Professional Conduct apply to an attorney's conduct "in connection with a proceeding" in New Jersey, even if the conduct at issue took place outside of the jurisdiction and even if the attorney's practice is located outside of New Jersey. See <u>In re Prudential</u>, 911 F.Supp. at 151 (applying ABA model <u>Rule 8.5</u> and holding that it would enforce only New Jersey Ethics Rules of Conduct in connection with the proceeding in New Jersey, "although another jurisdiction may obviously exercise concurrent control over the members of its bar".

<u>Apple Corps. Ltd. v. International Colelctors Society</u>, 15 F.Supp. 2d 456, 473 (D.N.J. 1998); see also <u>United States v. Balter</u>, 91 F.3d 427 (3rd Cir.) cert. denied 519 U.S. 1011 (1991); <u>Cardona v. General Motors</u>, 942 F.Supp. 968 (D.N.J. 1996).

As a consequence, it is New Jersey law and its Rules of Professional Conduct that govern the reasonableness of an attorney's fee. While the existence of a Contingent Fee Agreement between the Pietragallo firm and Dr. DePace presents a generally enforceable contract, any fee agreement in New Jersey must satisfy both the general requirements of contract law and the special requirements of professional

ethics. <u>Cohen v. Roy</u>, 146 N.J. 140, 155 (1996).The firm's freedom to contract with Dr. DePace is subject to the constraints of ethical considerations as well as the Court's inherent supervision. <u>Ibid.</u> In New Jersey, as well as the Federal District, courts scrutinize contracts between attorneys and their clients to insure that the fees are fair. <u>Ibid.</u> It is the attorney that bears the burden of establishing fairness and reasonableness of the transaction. <u>Ibid.</u>, at 156, citing <u>In the Matter of Nichols</u>, 95 N.J. 126, 131 (1984) and <u>In the Matter of Gallop</u>, 85 N.J. 317, 322 (1981).

The ultimate rule governing the attorney/client relationship with regard to fees is that an attorney may not charge an unreasonable fee. <u>Cohen</u>, <u>supra.</u>, 146 N.J. at 156; <u>R.P.C.</u> 1.5(a); <u>Restatement of the Law, (Third), The Law Governing Lawyers, (Restatement)</u>, §34.

Specifically applicable to the instant circumstances where the firm has in fact secured "full payment" for all of its hours spent on behalf of DePace's litigation, and then seeks a bonus fee of another 168%, the fee arrangement is simply unreasonable:

> A contract providing that a lawyer is to receive both a standard contractual fee and a fee award, without crediting the award against the contractual fee, is presumptively unreasonable under §34.

<u>Restatement, (Third) of The Law Governing Lawyers</u>, §38(3), comment f.

Even in circumstances where the plaintiff, such as Dr. DePace may be deemed a "sophisticated client" a retainer agreement may not violate the overarching public policy of an attorney's fee being reasonable. Regardless of sophistication, a retainer agreement may not provide unreasonable fees or the unreasonable waiver of a client's rights. <u>Cohen</u>, <u>supra.</u>, 146 N.J. at 156. There is no exception to the public policy

prohibiting unreasonable fees that can be erected by a private contingency agreement even if executed in Pennsylvania, some five miles away from the courthouse steps.

Plaintiff DePace's assertion of unreasonableness in these circumstances is simple. The law firm has been paid every penny to which it was entitled pursuant to its own calculation and submission of total hours multiplied by the generous hourly rates it demanded. Once paid for every penny of its time, an additional bonus fee without proper consideration of fee enhancement criteria is per se unreasonable. Pursuant to R.P.C. 1.5 and the New Jersey Supreme Court, the applicable formula with regard to fee shift compensation mandates a two-step process. First, calculation of the "loadstar". The number of hours reasonably expended multiplied by a reasonable hourly rate. Rendine v. Pantzer, 141 N.J. 292, 334-335 (1995). Thereafter, "the trial court, after having carefully established the amount of the loadstar fee, should consider whether to increase that fee to reflect a risk of non-payment in all cases in which the attorneys' compensation entirely or substantially is contingent on a successful outcome". Ibid., at 333.

The Supreme Court has established a range of compensation in high risk cases and has articulated the methodology to be employed:

> We conclude that contingency enhancement in shifting cases ordinarily should range between 5 and 50% of the loadstar fee, with the enhancement and typical contingency cases ranging between 25% and 35% of the loadstar. Such enhancement should never exceed 100% of the loadstar and an enhancement of that size would be appropriate only in the rare and exceptional case in which the risk of non-payment has not been mitigated at all, i.e., where the "legal" risk constitutes "an economic disincentive independent of that created by the basic contingency in payment . . . [and] the result achieved . . . is significant and of broad public interest.   . . . Enhancements of that magnitude will be reserved for cases of that description in which no prospect existed for the attorney to be

compensated by payment of a percentage of a large damages award, and in which the relief sought was primarily equitable in nature.

Rendine v. Pantzer, 141 N.J. at 343.

In essence, the award of a full statutory fee, has fairly and reasonably compensated even the most experienced counsel throughout five years of litigating a high risk case. Once so compensated, and even assuming the potential of additional fees, there must be judicial approval of any enhancement. In this instance, the Pietragallo firm established its full fees and then agreed to accept them as "full payment". Although the firm had every ability to mitigate the depletion of Dr. DePace's settlement share by demanding an enhancement through its settlement discussions, or alternatively seeking the Court's review on the reasonableness of a $720,000 contingency bonus fee, it did neither. The existence of additional contingent fees was simply concealed until after the settlement agreement and court's order of dismissal was entered.

In addressing the purported reasonableness of a contingent fee in the context of statutory fees pursuant to 42 U.S.C. §1988, the Supreme Court affirmed the Ninth Circuit Court of Appeals in Venegas v. Mitchell 495 U.S. 82 (1990). In so affirming, the Supreme Court validated the holding of the Ninth Circuit Court of Appeals as follows:

> . . . Where the District Court concludes that a contingent fee that exceeds the statutory award is reasonable, the plaintiff may be required to pay the difference between the §1988 award paid by the defendant and the contingent fee. The plaintiff's attorneys are not entitled to both the statutory award and the full amount of the contingent fee.   . . .

Venegas v. Skaggs, 877 F.2d. 527, 534, n7 (Ca. 9th Cir. 1989).

The existence of a contingent fee agreement is a necessary and material factor in determining what statutory fee award is reasonable. It is the court however that is

charged with the responsibility of determining the reasonableness of the statutory fee award and the reasonableness of any enhancement by virtue of a pre-existing contingency. Here however, the reasonableness of the fee is incomprehensible without disclosure of the contingency in the first instance. The necessity of joint consideration of those dual fee entitlements was the focus of the Third Circuit as follows:

> As a general matter, the use of the multiplier has striking advantages over dual awards. The multiplier allows the trial court to control the extent to which the risks should be compensated, places the burden for the risk upon the discriminator, allows the victim full recovery and dispels any appearance of an attorney windfall.

Sullivan v. Crown Paper Board Company, 719 F.3d 667, 670 n.3 (3rd Cir. 1983).

The concept was echoed by the Sixth Circuit as follows:

> . . . The existence of a contingency contract may be considered by a district court as an element to be considered in determining the market value of an attorney's services, but the court is not bound in any sense by that agreement.   . . . The Court therefore concludes that an [FLSA] fee award should not be limited by the contingent fee agreement . . .

> \* \* \*

> . . . Yet, if we agree with the principle that underlies GE's appeal form the fees, our other alternative would be to reduce or strike down the independently negotiated agreement between Walsh and his attorneys. We again note that the district court has broad equity power to do just that if it determines that the overall compensation exceeds the bounds for professional propriety.

United States, ex rel. Taxpayers Against Fraud v. General Electrivc Company, 41 F.3d 1032, 1048 (6th Cir. 1995).

The Pietragallo law firm declared and acknowledged that it was agreeing to accept as "full payment" $430,000 in statutory fees. It did not disclose the existence of its contingent agreement with Dr. DePace in securing its full measure of compensation. Nor did the firm seek to credit Dr. DePace with those statutory. It instead demands dual

fees at 100% of each number which is clearly beyond the bounds of professional propriety pursuant to R.P.C. 1.5 and the New Jersey Supreme Court's methodology in Rendine. Plaintiff therefore seeks an Order invalidating the contingent fee agreement or alternatively crediting the statutory fees paid against DePace's obligation under that contingency.

POINT III

THE CONTINGENCY FEE AGREEMENT MANDATING COMMERCIAL ARBITRATION OF A FEE DISPUTE IS IN VIOLATION OF NEW JERSEY PROFESSIONAL RESPONSIBILITY LAW AND IS UNENFORCEABLE.

Pursuant to New Jersey Rules of Professional Conduct, a client must be informed that he has a right to the Supreme Court's Fee Arbitration process or the contingent fee agreement is infirm. New Jersey Rules of Professional Conduct require compliance with Court Rule 1:20A. Failure to disclose a client's right to court sponsored arbitration invalidates any private agreement for commercial arbitration:

> It is not sufficient, moreover, that the client have experience in business to permit a conclusion that the client made an informed decision to agree to proceed with arbitration in all instances. In addition, an enforceable agreement should contain a clear statement that a client has an absolute right to proceed under R. 1:20A.

Kamaratos v. Paloas, 360 N.J. Super. 76, 87 (App. Div. 2003).

Likewise, R. 1:20A is mandatory on out of state counsel. See, Bernick v. Frost, 210 N.J. Super. 397 (App. Div. 1986); Anderson v. Conley, 206 N.J. Super. 132 (Law Div. 1985); and Peteroy v. Trichon, 302 N.J. Super. 44 App. Div. 1997).

The essential issue posed herein is not whether the statutory fees paid are reasonable. The issue instead, is as a matter of law, whether a 268% value achieved by an independent contingent fee is fair and equitable pursuant to R.P.C. 1.5(a) when the

13

firm has by its own admission, received full and complete compensation for the entirety of its work and labor.

The Pietragallo Firm's attempt to circumvent the controlling rules of the Federal District, as well as the mandatory Rules of Professional Conduct as determined by the New Jersey Supreme Court and L. Civ. R. 103.1(a) cannot be tolerated. Plaintiff does therefore submit that the Pietrogallo Firm must be restrained from proceeding in the Philadelphia Court of Common Pleas pursuant to L. Civ. R. 65.1(a), until final order and determination by this Court.

Respectfully submitted,

JACOBS & BARBONE, P.A.
Attorneys for Plaintiff Nicholas M. DePace, MD

By: _____
Louis M. Barbone

Dated:  February 26, 2013

14

CARL D. POPLAR, PA
Carl D. Poplar, Esquire
1010 Kings Highway South, Building 1
Cherry Hill, New Jersey 08034
(856) 216-9979

JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys at Law
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
jacobsbarbone@comcast.net
Attorneys for Nicholas M. DePace, M.D.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF NEW JERSEY, ex rel. NICHOLAS M. DEPACE, M.D., | Civil Action No. 08-5626 (JEI) |
| Plaintiff<br><br>v.<br><br>THE COOPER HEALTH SYSTEM, a New Jersey Non-Profit Corporation (Cooper Hospital), et als<br><br>Defendants. | AFFIDAVIT OF NICHOLAS M. DEPACE, M.D. IN SUPPORT OF PLAINTIFF'S APPLICATION FOR EMERGENT RELIEF, TO REOPEN PURSUANT TO L. CIV. R. 41.1(b) AND FOR THE COURT'S DETERMINATION OF REASONABLENESS OF ATTORNEYS' FEE PURSUANT TO L.CIV. R. 103.1(a). |

STATE OF NEW JERSEY:
                         SS.
COUNTY OF CAMDEN:

       Nicholas M. DePace, M.D., of full age, being duly sworn according to law upon his oath, deposes and says:

       1.    I am the relator in the above-captioned action brought pursuant to the *qui tam* provisions of the False Claim Act, 31 U.S.C. §3730(b) and the New Jersey False Claims Act, N.J.S.A. 2A:31C-1, et. seq., and file this Affidavit with the United States District Court for the purpose of invoking the Court's supplemental jurisdiction to hear and decide the disputes which have arisen since the Court entered its Order on January 24, 2013. (Exhibit 1).

2.     Until the filing of this application for emergent relief and this Motion to Reopen, I was at all times from February of 2008 to the date of Settlement Agreement, represented by Marc Raspanti, Esquire and Michael Morse, Esquire of the firm of Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP. Given the current dispute, I am now represented by Carl D. Poplar, Esquire, and Louis M. Barbone, Esquire of the firm of Jacobs & Barbone, P.A. The instant application has been necessitated by my former attorneys having filed a Petition to compel private arbitration of the current fee dispute in the Philadelphia Court of Common Pleas on February 19, 2013. (Exhibit 2). Additionally, by my former attorneys having filed a motion in the Philadelphia Court of Common Pleas on February 21, 2013 to preserve the status quo of disputed funds in their possession paid pursuant to the *qui tam* settlement. (Exhibit 3). The Petition and motion filed by my former attorneys require under Pennsylvania law, answers and responses on or before March 13, 2013.

3.     The instant dispute with my former attorneys had been the subject of conference with all parties present on February 6, 2013. Thereafter, my current and former attorneys agreed to correspond and discuss resolution of the fee dispute. As of February 20, 2013, I understood that discussion continued between counsel and in fact received the letter of Mr. Alfano of the Pietragallo law firm representing that "we would work through resolution of this dispute". (Exhibit 4). The very next day however I and my current counsel received a copy of Mr. Alfano's Petition to compel private arbitration (Exhibit 5) and on the following day received Mr. Alfano's motion to preserve disputed funds, all filed in the Philadelphia Court of Common Pleas.(Exhibit 6).

4.     The current dispute with my former attorneys springs directly from the Settlement Agreement executed by all parties on January 17, 2013 (Exhibit 7). In Paragraph 3 of the Terms and Conditions (Exhibit 7, page 3), I was supposed to receive the "settlement amount" by an electronic funds transfer pursuant to written instructions provided to my former attorneys. The settlement amount, namely $2,394,000 was never electronically transferred to me, because my former attorneys had that money wired directly to their law firm's account following the payments made by the United States and the State of New Jersey. I never authorized my attorneys to accept that money on my behalf, and have demanded that they pay the settlement amount to me pursuant to the terms and conditions of the settlement agreement. To date, they have refused to do so and have instead paid a portion of that money, namely $430,000 to my account while unilaterally deciding to retain all of the rest in their account. (Exhibit 4).

5.     The Settlement Agreement also provided in paragraph 4 of its Terms and Conditions that "full payment" of expenses, attorneys' fees and costs were to be paid by defendant Cooper directly to my former attorneys. That money was in fact paid to the Pietragallo law firm on or about February 6, 2013. (Exhibit 7, paragraph 4, page 3).

6.     The "full payment" made to the Pietragallo law firm was based upon the firm's itemization of all legal fees, costs and expenses incurred throughout the entire timeframe of the action from their initial engagement to the date of Settlement Agreement. The firm's invoice for "total fees" most of which was calculated upon hourly

2

billing rates of between $650 and $425, resulted in a total invoice of balance due in the amount of $458,420.55. (Exhibit 8). Pursuant to the terms of the Settlement Agreement, specifically paragraph 4 (Exhibit 7, page 3), the Pietragallo firm agreed to accept "full payment" at $430,000 for those expenses, attorneys' fees and costs.

7.     On January 31, 2013, my former attorneys, Mr. Raspanti and Mr. Morse, provided a memorandum regarding the distribution of my share per a Contingent Fee Agreement executed February 15, 2008. (Exhibit 9). I refused to sign the proposed distribution because the Pietragallo firm intended to take as a fee from my share of the settlement the sum of $720,918.25 over and above the Doctor's payment of "full fees" in the amount of $430,000. I deem the position of my former attorneys in claiming entitlement to a total legal fee in the amount of $1,150,918.25 to be unreasonable and in violation of what I understand to be the controlling Rules of Professional Conduct promulgated pursuant to New Jersey Supreme Court. The firm's claim to an additional $720,918.25 would represent a total fee value of 268%, an extraordinary and unreasonable level of compensation. The firm's actual fees as proposed in their Memorandum of Disbursement (Exhibit 9), were never disclosed within the Settlement Agreement itself, and were never approved by this Court. Notwithstanding the attempt to resolve the dispute with my former firm, they have now filed independent actions in the Philadelphia Court of Common Pleas in an effort to usurp this Court's jurisdiction. As such, I seek an Order of the Court enjoining the Pietragallo firm from continuing to prosecute those actions in the Philadelphia Court of Common Pleas, until such time as this Court addresses my application to reopen, enforce the terms of the settlement and for judicial review the reasonableness of fees charged by the Pietragallo law firm.

_____
Nicholas M. DePace, M.D.

Sworn and subscribed to
before me this _____ day
of February, 2013.

_____

3